UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
┌─────────────────────────────────────┐
│ WILLIAM ZANES, et al.,               │
│                                      │
│           Plaintiffs,                │
│                                      │
│      v.                              │
│                                      │
│ FLAGSHIP RESORT DEVELOPMENT,         │
│ LLC, t/a and/or d/b/a FANTA          │
│ SEA RESORTS, FANTA SEA               │
│ RESORTS, and JOHN DOES 1-5,          │
│ and 6-10,                            │
│                                      │
│           Defendants.                │
└─────────────────────────────────────┘
```

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 09-3736
(JEI/JS)

**OPINION**

**APPEARANCES:**

COSTELLO & MAINS, P.C.
By: Deborah L. Mains, Esq.
18000 Horizon Way, Suite 800
Mount Laurel, New Jersey 08054
         Counsel for Plaintiffs

COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.
By: Russell Lichtenstein, Esq.
    Alison Tomljenovic, Esq.
125 Atlantic Ave, 3rd Floor
Atlantic City, New Jersey 08401
         Counsel for Defendants

**IRENAS**, Senior District Judge:

Plaintiffs initiated this collective action pursuant to the Fair Labor Standards Act ("FLSA") on behalf of all current and former employees of Defendant who were engaged in the sale of timeshares and related products and services.[1]  Plaintiffs allege

---

[1]  The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

1

that Defendant failed to pay overtime compensation in violation of the FLSA and the New Jersey State Wage and Hour Law.  Pending before the Court is Plaintiffs' Motion for Final Collective Action Certification and Defendant's Motion for Decertification. Also pending before the Court are cross-motions for summary judgment on whether Plaintiffs are employees within the meaning of the FLSA.

**I.**

On July 28, 2009, Plaintiffs William Zanes, Michael Thompson, and Tim Claus brought this proposed collective action against Defendant Flagship Resort Development, LLC t/a and/or d/b/a Fanta Sea Resorts and Fanta Sea Resorts.[2]  The Complaint alleges violations of the FLSA and the New Jersey State Wage and Hour Law.  (Compl. ¶ 14.)

Defendant is in the business of marketing and selling timeshare units in Atlantic City and neighboring communities. (*Id.* ¶¶ 9, 32.)  Defendant employs two types of salespeople: front-line salespeople and travel club salespeople.  Front-line salespeople give tours of the resort property to entice customers into purchasing a timeshare.  (Claus Dep. at 15:19-19:4.)  These tours last anywhere from one to seven hours, depending on the particular sales pitch that is employed.  (*Id.*)  If the tour does

---

[2]  Defendant Flagship Resort Development Corporation was improperly named in the Complaint as Flagship Resort Development, LLC t/a and/or d/b/a Fanta Sea Resorts.

not result in a purchase, customers then meet with a salesperson from the travel club where they have an opportunity to purchase a trial membership in the timeshare program.  (*Id.*)

Travel club salespeople were required to report to the sales floor at 10 a.m. for a sales meeting and remain on the sales floor at all times while tours of the resort property were ongoing.  (Zanes Dep. at 17:19; Claus Dep. at 32:22-24.)  There were approximately five to six travel club salespeople who would rotate meeting with customers who returned from the tour without making a timeshare purchase.  (Zanes Dep. at 17:19.)  Although there were no set breaks, travel club salespeople were permitted to take breaks with permission from a supervisor.  (Claus Dep. at 33; Zanes Dep. at 28.)

Plaintiff Zanes was employed by Defendant as a travel club salesperson from August 2008 through November 2008.[3]  (Zanes Dep. at 7:7-10.)  Plaintiff Claus was employed by Defendant as a travel club salesperson from September 2008 through December 2008.  (Claus Dep. at 14:12-15, 52:5-15.)  Plaintiff Thompson was employed by Defendants from January 8, 2001 until early February 2009.[4]  (Thompson Dep. at 44:5-61:24.)  From 2007 until his

---

[3]  Plaintiff Zanes was also employed by Defendant from May 2004 through 2006, and from 1999 through 2000.  (Zanes Cert. to Motion for Conditional Class Cert. at ¶ 2.)  However, these time periods are not relevant for the purposes of the instant action.

[4]  The exact date of Plaintiff Thompson's termination is unclear.  During his deposition, he identified both February 1,

termination in 2009, Plaintiff Thompson was a travel club salesperson. (*Id.* at 58:22-23.)

Travel club salespeople were compensated strictly on a commission basis. (Zanes Dep. at 35:23.) Upon beginning employment, each travel club salesperson received $300.00 or $240.00 per week, as a refundable draw against future commissions.[5] (*Id.* at 37:13-22; Claus Dep. at 47-49.)

Plaintiffs assert that they regularly worked in excess of 40 hours each week without receiving over-time compensation. (*See* Mains Cert. Ex. H, answers to Interrog. #3.) In addition, Plaintiff Claus testified that Defendant provided no mechanism for recording hours worked by salespeople. (Claus Dep. at 19:15-21.)

On November 9, 2010, this Court conditionally certified a collective action for

> [a]ny and all employees engaged in the sale of timeshares or other products and services that (i) are/were not paid overtime compensation at a rate not less than one and one-half times their regular rate for each hour worked beyond forty (40) hours during a work week; and (ii)

_____

2009 and February 6, 2009 as the date of termination. (Thompson Dep. at 58:25, 61:24.)

[5] Checks prior to September 25, 2008 were in the amount of $300. After that date, they were reduced to $240. (Claus Dep. at 47:17-22; Zanes Dep. at 39-40.) Plaintiffs did not know why their checks were reduced. (*Id.*)

4

choose to opt-in to this action.[6]
During the opt-in period, 24 individuals elected to join the
litigation.  Subsequently, 11 elected to voluntarily dismiss
their claims.  Following a motion by Defendant, Joseph Astick,
Gerald Alston, and Charles Moore were dismissed from the action.
The record before the Court includes interrogatories from only
seven of the remaining ten Plaintiffs: Lisa Ball, Kenneth
McClellan, Peter Vitale,[7] Albert Robinson, Monique Goines, Kim
Shannon, and Julius Clemens.  No discovery and no stipulations of
dismissal have been filed with respect to Karen Williams,
Jennifer Mixson and Carlos Lajara.[8]

On September 19, 2011, Plaintiffs filed a Motion for Final
Class Certification.  On September 29, 2011, Defendant filed a
Cross Motion for Decertification.  On October 20, 2011, Defendant
filed a Motion for Summary Judgment and on November 21, 2011,

---

[6] Plaintiffs' proposed class includes all current and
former employees of Defendants who sold timeshares or other
products and services from three years prior to the date the
proposed notice is mailed to the present.  (See Proposed Notice
at 1)  This three year time limit comports with the statute of
limitations for the FLSA, which is three years for willful
violations and two years for non-willful violations.  See 29
U.S.C. § 255(a).

[7] Peter Vitale is incorrectly identified as Joseph Vitale
at Dkt. No. 49.

[8] In an email from Plaintiff's counsel, Carlos Lajara and
Karen Williams were designated as "authority to dismiss received"
and "to be dismissed by stip" respectively.  Jennifer Mixson is
designated "active in case (to be deposed 9/26)." (See Def's
Motion to Dismiss at Ex. J.)

Plaintiffs filed a Cross Motion for Summary Judgment.

## II.

### A.

Under 29 U.S.C. § 216(b), an employee who feels his or her right to unpaid overtime compensation has been violated may bring an action "for and in behalf of himself or themselves and other employees similarly situated."

The term "similarly situated" is not defined in the FLSA. In "the absence of guidance from the Supreme Court and Third Circuit, district courts have developed a test consisting of two stages of analysis" to determine if employees are similarly situated. *Kronick v. Bebe Stores, Inc.*, 2008 WL 4546368 at *1 (D.N.J. 2008).

The first analysis occurs when plaintiffs move for conditional certification of the potential class. This first analysis is also called a stage one determination. During stage one the court determines if notice should be given to potential class members. *Morisky v. Public Service Electric and Gas Co.*, 111 F.Supp.2d 493, 497 (D.N.J. 2000)(quoting *Thiessen v. General Electric*, 996 F.Supp. 1071, 1080 (D.Kan. 1998)). Should conditional certification be awarded during stage one, then notice will be sent out to the potential class of plaintiffs.

It is possible for a class to be certified at stage one but fail certification at stage two. Granting a conditional

6

certification in stage one is not a final or permanent decision. Once discovery is largely complete and the case is ready for trial, the case is in stage two.  If the defendant moves to decertify the class, a second, final determination on class certification will be made during stage two.

The burden of proof that must be met by the plaintiff is higher during stage two because the court "has much more information on which to base its decision."  *Thiessen*, 996 F.Supp. at 1080;  *See also Herring v. Hewitt Assoc., Inc.*, 2007 WL 2121693 (D.N.J. 2007).  During this final determination, the court decides whether the plaintiffs have shown that they are "similarly situated" to the potential class.  If the court determines during the stage two determination that the class of plaintiffs are "similarly situated," then the case may proceed to trial as a collective action.  *Morisky*, 111 F.Supp.2d at 497. However, should the court determine that the plaintiffs are not "similarly situated," then the class will be decertified or split into subclasses.

## B.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The summary judgment standard is not affected when the parties file cross-motions for summary judgment. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). Such motions "'are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Transportes Ferreos de Venez. II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001)

8

(quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).  If after review of cross-motions for summary judgment the record reveals no genuine issues of material fact, then judgment will be entered in favor of the deserving party in light of the law and undisputed facts.  *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

### III.

### A.

Plaintiffs move for final class certification, while Defendant cross-moves for decertification arguing that the named Plaintiffs are not similarly situated to the proposed class members.

At this second stage of FLSA class certification, "Plaintiffs bear the burden of showing they are similarly situated to the remainder of the proposed class." *Morisky*, 111 F.Supp.2d at 496.  In determining whether Plaintiff has met that burden, courts look at the "disparate factual and employment settings of the individual plaintiffs, the various defenses available to defendants, and fairness and procedural consideration." *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987).  With respect to the similarly situated analysis, courts must look "beyond the mere facts of job duties and pay provisions." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).  Other relevant factors include geographic location,

9

supervision at each location, and varied compensation structures. *Id.* at 952; *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000).

In support of final class certification, Plaintiffs argue that they are similarly situated to the class members because they all worked in the same location, performed nearly identical duties, and were compensated on a draw against commission basis. (Pl's Br. in Support at 7.)  Defendant argues that Plaintiffs "engage in disparate work activities, have different professional and financial responsibilities and are compensated at varying rates and by different methods."  (Def's Br. in Opp at 4.)

With respect to job responsibilities, all of the Plaintiffs are either front-line or travel club salespeople.  As noted earlier, front-line salespeople sell timeshares, while travel club salespeople sell mini-vacations, which are trial memberships in the timeshare program.  *See supra* note 9.  Both types of salespeople had to complete paperwork for any sales made.  In support of decertification, Defendant points out that front-line salespeople took customers on tours of the resort property and spent more time making a sales pitch, while travel club salespeople remained in the sales area and spent considerably less time with customers.  (Def's Br. in Opp. at 8-9.)

With respect to compensation, both travel club and front-line salespeople were paid on a draw against commission basis,

10

though the amount of commission differed for the two groups.[9] Defendants also point out that only front-line salespeople had to maintain an account of $2,000 in the event that a customer did not make timely payments on a timeshare. (*Id.* at 9.)

The Court finds, based on all the evidence, that Plaintiffs have presented adequate evidence to show that the class members are similarly situated. All Plaintiffs had similar job duties, responsibilities and compensation structures. All Plaintiffs assert common claims of failure to properly pay overtime compensation in violation of the FLSA. Although differences between the Plaintiffs in the travel club and front-line departments exist, any such differences are outweighed by the similarities between those Plaintiffs.

With respect to fairness and procedural considerations, the Court does not find that the size of the class is unmanageable or that a collective action would prejudice Defendant. In fact, the class has a total of ten people, only seven of whom have participated in discovery. Likewise, the Court does not find that defenses such as the outside sales exemption or whether individual claimants are independent contractors weigh against

---

[9] It also appears that all salespeople were paid on a 1099 basis, except for the year 2008, when all were paid on a W-2 basis. (*See* Pls' Br. in Support at 7.)

class certification.[10]

Because the Court finds that the Plaintiffs are similarly situated, the Court will deny Defendant's Motion to Decertify the collective action, and grant Plaintiff's Motion for Final Certification.

**B.**

Defendant moves for summary judgment on the FLSA claim arguing that the named Plaintiffs are independent contractors. Plaintiffs cross-move for summary judgment arguing that the named Plaintiffs are employees within the meaning of the FLSA.

Under Section 7(a) of the FLSA, employees are generally required to be paid overtime for all hours worked in excess of 40 hours per work.  An employee under the FLSA is "any individual employed by an employer" while an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(e)(1), (d).

Whether a person is considered an employee within the meaning of the FLSA depends on a six factor test: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the worker's opportunity for

---

[10]   In fact, a Department of Labor Opinion Letter has declared that timeshare salespeople do not qualify for the outside sales exemption.  *See Davidson v. Orange Lake Country Club, Inc.*, 2008 WL 254136 (Jan. 29, 2008 M.D. Fla)(citing P.DeCamp, Department of Labor, Wage and Hour Div., Opinion Letter, FLSA 2007-4, 2007 WL 506577 (Jan. 25, 2007).

profit or loss depending upon his managerial skill; (3) the worker's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. *Martin v. Selker Bros. Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991). Neither the presence nor the absence of any particular factor is dispositive; rather the determination of whether the economic realities indicate an employer-employee relationship must be based on the "circumstances of the whole activity." *Id.*

While the parties make arguments with respect to all six factors, the determination of the named Plaintiffs' status ultimately turns on an analysis of Defendant's control of the work, Plaintiffs' opportunity for profit and loss, and the permanence of the working relationship.[9]

_____

[9]   The factor regarding investment in equipment is inapplicable to this case, as there is no dispute that the sale of mini-vacations does not require an investment in equipment, materials or helpers.

The remaining factors of special skills and whether the service is an integral part of the business plainly weigh in favor of an employer-employee relationship. First, the "initiative, judgment, and foresight in open market competition," which Defendant identifies as the essential skills of travel club salespeople, are not special skills. *See Martin*, 949 F.2d at 1295 ("Routine work which requires industry and efficiency is not indicative of independence and nonemployee status."). Second, as evident by the testimony of Defendant's own representative, trial memberships in the timeshare program are plainly integral to Defendant's business of selling timeshares. (*See* Mains Cert. Ex.

13

With respect to the control factor, courts should consider the degree of supervision over the worker, control over the worker's schedule, and instruction as to how the worker is to perform his duties.  *See Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675-76 (1st Cir. 1998); *Martin*, 949 F.2d at 1294.  Defendant argues that Plaintiffs controlled the manner in which their work was to be performed.  In support of this, Defendant points to the fact that travel club salespeople (1) chose whether to work individually or in pairs, (2) determined the manner and duration of their sales pitch, (3) completed paperwork to close a sale, and (4) kept records to track their commissions.  (Def's Br. in Support at 10.)  In contrast, Plaintiffs argue that Defendant controlled the manner in which they performed their work.  In support, Plaintiffs point to the fact that they were (1) required to attend sales meetings and adhere to policies in the employee handbook, (2) required to obtain approval for time off, (3) paid according to a compensation structure set by Defendant, and (4) bound by non-compete and confidentiality agreements.  (Pls' Br. in Opp. at III.A.1.)

The Court finds that Defendant controlled the overall manner

C. at 19:13-18.)("The travel club is a trial membership introduction to timeshare without making any long-term commitment.  It's a short-term commitment as opposed to a long-term commitment.  It gives [customers] an option to purchase a timeshare later on.")

of Plaintiffs' work by setting Plaintiffs' compensation structure, establishing working hours and approving days off, and by requiring Plaintiffs to adhere to its policies in performing work.  While Defendant has identified specific ways that Plaintiffs exercise discretion in making and recording sales of trial-memberships, this limited discretion over the manner in which sales were pitched does not alter the fact that Defendant exercised control over the day-to-day operations of the travel club department.  Accordingly, this factor weighs in favor of an employer-employee relationship.

With respect to the worker's opportunity for profit and risk of loss, courts should consider whether the worker's income depends on factors beyond his control or whether it is impacted by the worker's managerial skills. *Martin*, 949 F.2d at 1294. Defendant argues that Plaintiffs had immense opportunity for profit depending on their skill at selling mini-vacations. (Def's Br. at 11.)  While it is true that Plaintiffs' compensation was based on a commission with a refundable draw based on sales of trial memberships, the fixed commission schedule was set by Defendant.  In addition, because the volume of clients depended solely on Defendant's ability to attract potential customers to the resort in the first place and not on Plaintiffs managerial or sales skills, Plaintiffs had no meaningful opportunity for profit.  Accordingly, this factor

weighs in favor of an employer-employee relationship.

Regarding the degree of permanence of the working relationship, courts should consider the exclusivity, length and continuity of the relationship. *Martin*, 949 F.2d at 1295; *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988). Defendant points out that travel club sales positions had a high rate of turnover; Thompson worked in the Travel Club for two years, while Claus and Zanes worked there for approximately four months each. Plaintiffs point out that while employed by Defendant, they worked exclusively for Defendant, and were bound by a non-compete agreement. (*See* Mains Cert. Ex. Q. ¶ 10.)

While the short tenure of the travel club employment of Zanes and Claus does not have the length of a typical employment relationship, Thompson was employed as a travel club salesperson for two years. The record also reflects that Thompson signed an "Independent Contractor Sales Coordinator Agreement" which prohibited him from competing directly or indirectly during the course of his employment and for one year after.[10] Based on the number of hours Plaintiffs worked for Defendant, it appears that they each worked exclusively for Defendant. (*See* Claus Dep. at

---

[10] On Dec. 23, 2007, Thompson signed a "Pay Schedule" which included a two-year non-compete. (*See* Mains Cert. Ex. P.) However, the date of the "Independent Contractor Sales Coordinator Agreement" containing the one-year non-compete was Dec. 29, 2008. (*Id.* Ex. Q.) The record does not establish whether Zanes or Claus signed similar agreements containing non-compete clauses.

34:21, 54:7-8; Zanes Dep. at 40:2, 46:6-23; Thompson Dep. at 134:16-18, 136:6-15.)  On balance, the permanence of the employment relationship based on the record before the Court favors an employer-employee relationship.

In light of all the circumstances, the economic realities of the travel club sales program are indicative of an employer-employee relationship within the meaning of the FLSA. Accordingly, Defendant's Motion for Summary Judgment will be denied and Plaintiff's Motion for Summary Judgment will be granted.

### IV.

For the reasons stated above, Plaintiffs' Motion for Final Certification will be granted and Defendant's Motion for Decertification will be denied.  In addition, Defendant's Motion for Summary Judgment will be denied and Plaintiff's Motion for Summary Judgment will be granted.  The Court will issue an appropriate Order.


Date:  February 22, 2012



                              s/Joseph E. Irenas
                              **JOSEPH E. IRENAS, S.U.S.D.J.**